# UNITED STATES DISTRICT COURT
# DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| JAMES R. MORIARTY, *et al.*, | ) ) ) | |
| *Plaintiffs,* | ) ) | |
| *v.* | ) ) | Civil Action No. 1:18-cv-02649-CKK |
| THE HASHEMITE KINGDOM OF JORDAN, *et al.*, | ) ) ) ) | |
| *Defendants.* | ) ) ) | |

## REPLY MEMORANDUM IN SUPPORT OF
## THE MOTION TO DISMISS BY THE HASHEMITE KINGDOM OF JORDAN

**WHITE & CASE** LLP

Christopher M. Curran (D.C. Bar No. 408561)
Nicole Erb (D.C. Bar No. 466620)
Claire A. DeLelle (D.C. Bar No. 974945)
701 Thirteenth Street, N.W.
Washington, D.C., 20005-3807
(202) 626-3600
ccurran@whitecase.com
nerb@whitecase.com
claire.delelle@whitecase.com

*Attorneys for the Hashemite Kingdom of Jordan*

## **TABLE OF CONTENTS**

Page

ARGUMENT ..........................................................................................................................1

I. PLAINTIFFS' ALLEGATIONS ARE INSUFFICIENT TO SUPPORT A PLAUSIBLE INFERENCE THAT JORDAN IMPLIEDLY WAIVED ITS SOVEREIGN IMMUNITY ........................................................................................1

II. PLAINTIFFS' REQUEST FOR JURISDICTIONAL DISCOVERY IS UNFOUNDED ............................................................................................................6

CONCLUSION .......................................................................................................................8

## **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*\* Argentine Republic v. Amerada Hess Shipping Corp.*,
  488 U.S. 428 (1989) ................................................................................................ 1, 2, 3, 5

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .............................................................................................................7

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .............................................................................................................7

*Crist v. Republic of Turkey*,
  995 F. Supp. 5 (D.D.C. 1998) ........................................................................................ 6, 7

*Edye v. Robertson*,
  112 U.S. 580 (1884) ........................................................................................................ 5, 6

*Factor v. Laubenheimer*,
  290 U.S. 276 (1933) .............................................................................................................7

*Freeman v. Quicken Loans, Inc.*,
  566 U.S. 624 (2012) .............................................................................................................4

*Gutch v. Federal Republic of Germany*,
  444 F. Supp. 2d 1 (D.D.C. 2006) .................................................................................. 3, 4

*In re Iraq & Afg. Detainees Litig.*,
  479 F. Supp. 2d 85 (D.D.C. 2007) ....................................................................................5

*In re Papandreou*,
  139 F.3d 247 (D.C. Cir. 1998) ...........................................................................................7

*Livnat v. Palestinian Authority*,
  82 F. Supp. 3d 19 (D.D.C. 2015) ......................................................................................6

*Medellin v. Texas*,
  552 U.S. 491 (2008) ........................................................................................................ 5, 6

*Odhiambo v. Republic of Kenya*,
  764 F.3d 31 (D.C. Cir. 2014) .............................................................................................2

*Peterson v. Islamic Republic of Iran*,
  563 F. Supp. 2d 268 (D.D.C. 2008) .................................................................................7

*\* Phoenix Consulting, Inc. v. Republic of Angola*,
  216 F.3d 36 (D.C. Cir. 2000) .............................................................................................7

\* *Polak v. Int'l Monetary Fund*,
   657 F. Supp. 2d 116 (D.D.C. 2009) ............................................................................6, 7

*Princz v. Federal Republic of Germany*,
   26 F.3d 1166 (D.C. Cir. 1994) ........................................................................................5

\* *Strange v. Islamic Republic of Iran*,
   320 F. Supp. 3d 92 (D.D.C. 2018) .........................................................................2, 3, 5

*Travel Assocs., Inc. v. Kingdom of Swaziland*,
   No. 89-1235, 1990 U.S. Dist. LEXIS 11455 (D.D.C. Aug. 30, 1990) ...........................2

**Statutes and Other Authorities**

28 U.S.C. § 1605(a)(1) ...........................................................................................................1

Agreement on Science and Technology Cooperation, Jordan-U.S.,
   Apr. 5, 2007, T.I.A.S. No. 07-612 .................................................................................6

Restatement (Third) of the Foreign Relations Law of the United States
   (Am. Law Inst. 1987) ................................................................................................5, 7

Security and Defense Cooperation Agreement, Afg.-U.S.,
   Sept. 30, 2014, T.I.A.S. No. 15-101 ..............................................................................3

Statute of the International Court of Justice, June 26, 1945,
   59 Stat. 1055, T.S. No. 993 ...........................................................................................5

Treaty Concerning the Encouragement and Reciprocal Protection of Investment,
   Jordan-U.S., July 2, 1997, S. Treaty Doc. No. 106-30 .................................................6

Vienna Convention on Diplomatic Relations, Apr. 18, 1961,
   23 U.S.T. 3227, 500 U.N.T.S. 95 ..................................................................................2

Vienna Convention on the Law of Treaties, May 23, 1969,
   1155 U.N.T.S. 331 .........................................................................................................8

\* indicates authority on which counsel chiefly relies.

Plaintiffs' Opposition only confirms that the factual allegations in the Amended Complaint fail to support any plausible inference that Jordan impliedly waived its sovereign immunity from jurisdiction and suit in this case. The Opposition openly acknowledges that the D.C. Circuit construes implied waivers narrowly, but it conspicuously ignores the controlling precedent of *Amerada Hess*, which precludes a finding of implied waiver in this case.

## ARGUMENT

### I. PLAINTIFFS' ALLEGATIONS ARE INSUFFICIENT TO SUPPORT A PLAUSIBLE INFERENCE THAT JORDAN IMPLIEDLY WAIVED ITS SOVEREIGN IMMUNITY

Plaintiffs' Opposition readily accepts that the D.C. Circuit is reluctant to stray from recognized examples of the implied waiver exception. Opp'n 3-4; *see also* Jordan's Statement 5. The Opposition is mistaken, however, in asserting that Jordan "conclusively states that Plaintiffs' failure to state their waiver argument in terms of the examples . . . should result in dismissal of Plaintiffs' First Amended Complaint." *See* Opp'n 4. In fact, Jordan stated that Plaintiffs "have failed to allege any of the 'three examples' of implied waiver recognized by the D.C. Circuit" *and* that Plaintiffs "also have failed to allege facts supporting any plausible inference that Jordan intended to waive its sovereign immunity or indicated its amenability to suit in the United States." Jordan's Statement 5 (internal quotation marks and citations omitted). Absent such factual allegations, the suggestion that this case warrants "an *expansion* of implied waiver availability" (Opp'n 4 (emphasis added)) rings hollow.

Plaintiffs' Opposition inexplicably ignores the Supreme Court's holding in *Amerada Hess* that a foreign state does not waive its sovereign immunity under § 1605(a)(1) "by signing an international agreement that contains no mention of a waiver of immunity to suit in United States courts or even the availability of a cause of action in the United States." *See* Opp'n 1-8; *see also* 488 U.S. at 442-43; Jordan's Statement 6. Perhaps recognizing that this Court has

applied *Amerada Hess* to the Vienna Convention on Diplomatic Relations (*see Travel Assocs., Inc.*, No. 89-1235, 1990 U.S. Dist. LEXIS 11455, at *4-5; Jordan's Statement 6), Plaintiffs have now decided they "do not rely on the Vienna Convention as providing waiver authority." Opp'n 2, 5, 6. Instead, Plaintiffs rely entirely on the U.S.-Jordan SOFA (and its alleged incorporation of certain provisions of the Vienna Convention addressing "technical and administrative staff"). *Id.* at 4-8. But this reliance is unavailing, because — irrespective of whether U.S. soldiers hold diplomatic status within the meaning of the Vienna Convention — the SOFA between Jordan and the United States (like the Vienna Convention) does not mention any waiver of sovereign immunity or the availability of a cause of action in the United States. *See* U.S.-Jordan SOFA, ECF Nos. 12-2, 12-3; *see also Amerada Hess*, 488 U.S. at 442-43.

Plaintiffs cannot persuasively distinguish the SOFA at issue from the Vienna Convention based on the SOFA's bilateral nature. Opp'n 6. Courts have declined to find implied waiver in bilateral agreements just as they have done with respect to multilateral agreements. *See, e.g., Strange*, 320 F. Supp. 3d at 98-99 (rejecting implied waiver arguments arising from bilateral agreement between the United States and Afghanistan); *Amerada Hess*, 488 U.S. at 433 (concluding that the Treaty of Friendship, Commerce and Navigation between the United States and Liberia did not "carve[] out an exception to the FSIA"). Setting forth the "treat[ment]" or "status" of particular persons (Opp'n 6) does not imply a waiver of sovereign immunity. *See Strange*, 320 F. Supp. 3d at 98-99 (finding SDCA between the United States and Afghanistan — which in part defined the status and rights of individuals in the armed forces — did not waive Afghanistan's sovereign immunity); *see also Odhiambo v. Republic of Kenya*, 764 F.3d 31, 35 (D.C. Cir. 2014) (stating that 1951 Refugee Convention, concerning the status of refugees, "falls far short of the exacting showing required for waivers of foreign sovereign immunity").

This Court's decision in *Strange* is particularly on point because there this Court applied *Amerada Hess* as well as D.C. Circuit precedents to a SOFA, holding that a SOFA does not impliedly waive sovereign immunity unless it indicates amenability to suit. 320 F. Supp. 3d at 98-99 (quoting *Amerada Hess*, 488 U.S. at 442); *see also* Jordan's Statement 6-7. Contrary to Plaintiffs' assertion (Opp'n 7), implied waiver does not turn on whether an agreement between two nations specifies "obligations" or "conduct" expected by the foreign nation. The Supreme Court confirmed in *Amerada Hess* that "set[ting] forth substantive rules of conduct" in an agreement between two nations does *not* waive sovereign immunity. 488 U.S. at 442-43. Rather, implied waiver turns on whether the agreement at issue satisfies an "exacting showing" that the foreign government "indicated its amenability to suit." *Strange*, 320 F. Supp. 3d at 98; *see also* Jordan's Statement 3-7. Plaintiffs here have failed to make any showing — let alone an "exacting showing" — that Jordan "indicated its amenability to suit" in the U.S.-Jordan SOFA.

In addition, the SDCA at issue in *Strange* was not "silent on obligations of Afghanistan to Americans in Afghanistan" (Opp'n 7), as Plaintiffs suggest. *See* Security and Defense Cooperation Agreement, Afg.-U.S., art. 7, Sept. 30, 2014, T.I.A.S. No. 15-101, *available at* https://www.state.gov/documents/organization/244487.pdf (entered into force January 1, 2015) (obligating Afghanistan to, *inter alia*, provide "access to and use of the agreed facilities and areas" for the United States armed forces and obligating both parties to integrate plans "to ensure the safety of United States forces"). Indeed, *Strange* closely resembles the present case, right down to the tragic deaths of innocent U.S. soldiers serving their country abroad. The reasoning of *Strange* applies four-square here, and forecloses the claims against Jordan.

Plaintiffs' Opposition also fails in its effort to distinguish *Gutch v. Federal Republic of Germany*, 444 F. Supp. 2d 1 (D.D.C. 2006). *See* Opp'n 7 n.3. *Gutch* held that the NATO-

3

SOFA, which "set[] forth conditions under which members of the Allied Forces reside[d] in Germany," did not waive Germany's sovereign immunity because the SOFA in that case "ma[de] no mention of Germany's immunity from suit." 444 F. Supp. 2d at 8.

Furthermore, contrary to Plaintiffs' apparent belief (Opp'n 8 n.4), Jordan was not suggesting that this Court dismiss this case on grounds of *forum non conveniens*. Instead, Jordan was merely observing that nothing in the SOFA divests the Jordanian courts of jurisdiction to hear compensation claims relating to harm of U.S. military personnel in Jordan. Jordan's Statement 7. The alleged inconvenience to Plaintiffs of litigating in Jordan obviously provides no basis for this Court to retain the case in the absence of subject-matter jurisdiction. Notably, Plaintiffs' assertion that the trial of the perpetrator in Jordan was a show trial (Opp'n 2) is undermined by Plaintiffs' acknowledgement that the perpetrator is serving a sentence of life imprisonment (Am. Comp. ¶ 12) and by their own description of "systematic protests in Jordan against the shooter's conviction" (Opp'n 8 n.4).

Plaintiffs' invocation of the canon against surplusage (Opp'n 7-8) also misses the mark. That canon conveys a "general reluctan[ce] to treat statutory [or in this case treaty] terms as surplusage." *Freeman v. Quicken Loans, Inc.*, 566 U.S. 624, 635 (2012) (internal quotation marks and citation omitted). Here, Plaintiffs cannot identify any superfluous language in the SOFA at issue, so they instead argue that "a duty without a corresponding remedy would render the [SOFA] meaningless" and without "teeth." Opp'n 7. In particular, Plaintiffs argue that because the SOFA "discusses duties that Jordan assumed as to the U.S. military personnel," the availability of "remedy in the United States through a waiver would be clear." *Id.* at 8. With this wild inferential leap, Plaintiffs miss the point, again. Implied waiver does not turn on whether an agreement sets forth obligations of the foreign state or has "teeth," but rather whether the

agreement satisfies an "exacting showing" that the foreign government "indicated its amenability to suit." *Strange*, 320 F. Supp. 3d at 98 (holding that implied waiver "depends upon the foreign government's having at some point indicated its amenability to suit" (quoting *Princz v. Federal Republic of Germany*, 26 F.3d 1166, 1174 (D.C. Cir. 1994))); *see also* Jordan's Statement 3-7.

In any event, international agreements often impose duties or obligations — and even remedies — between states without providing for a private right of action or specifying dispute resolution procedures, and in such circumstances courts have declined to find implied waivers of sovereign immunity. *See, e.g.*, *Amerada Hess*, 488 U.S. at 442 (holding that the conventions at issue "set forth substantive rules of conduct and state that compensation shall be paid for certain wrongs," but neither "create private rights of action" nor waive immunity); *see also In re Iraq & Afg. Detainees Litig.*, 479 F. Supp. 2d 85, 116 (D.D.C. 2007) (recognizing that "international agreements, even those directly benefitting private persons, generally do not create private rights or provide for a private cause of action in domestic courts" (citing Restatement (Third) of the Foreign Relations Law of the United States § 907 cmt. a (Am. Law Inst. 1987)))); Restatement (Third) of the Foreign Relations Law of the United States § 907 cmt. a (Am. Law Inst. 1987) (stating that sovereign immunity, unless waived, may still bar suits against foreign states even when "a remedy was intended"). Such international agreements are not "empty letter[s]" "devoid of meaning," as Plaintiffs suggest. Opp'n 2, 7-8. They may be enforced through "diplomacy," *In re Iraq & Afg. Detainees Litig.*, 479 F. Supp. 2d at 117, among other state-to-state mechanisms, *see, e.g.*, Statute of the International Court of Justice art. 36, June 26, 1945, 59 Stat. 1031, T.S. No. 993 (providing jurisdiction over international disputes between states party to the Statute); *see also Medellin v. Texas*, 552 U.S. 491, 505 (2008) (recognizing that a treaty "ordinarily depends for the enforcement of its provisions on the interest and the honor of the

5

governments which are parties to it," that a treaty's "infraction becomes the subject of international negotiations and reclamations," and that it "is obvious that with all this the judicial courts have nothing to do and can give no redress" (internal quotation marks omitted) (citing *Edye v. Robertson*, 112 U.S. 580, 598 (1884))).

If Jordan and the United States had wanted to include dispute-resolution provisions in the SOFA, they could have done so. The two nations have previously executed bilateral agreements encompassing such provisions. *See, e.g.*, Treaty Concerning the Encouragement and Reciprocal Protection of Investment, Jordan-U.S., art. IX, July 2, 1997, S. Treaty Doc. No. 106-30 (authorizing private parties to resolve disputes through "courts or administrative tribunals of the Party that is a party to the dispute" and through international arbitration procedures); Agreement on Science and Technology Cooperation, Jordan-U.S., Annex I, art. II(D), Apr. 5, 2007, T.I.A.S. No. 07-612 ("Upon mutual agreement of the Parties, a dispute shall be submitted to an arbitral tribunal for binding arbitration in accordance with the applicable rules of international law.").

Instead of providing for a private right of action, or authorizing dispute resolution in U.S. courts, the SOFA in this case provides that "the issue of compensation for damage to property or personnel shall be addressed in subsequent negotiations," ECF No. 12-2, underscoring that the SOFA itself does not provide for such compensation, let alone private rights of action, and foreclosing any notion that Jordan impliedly waived its sovereign immunity in the SOFA itself.

## II.  PLAINTIFFS' REQUEST FOR JURISDICTIONAL DISCOVERY IS UNFOUNDED

Plaintiffs cannot justify their fallback request for jurisdictional discovery, because Plaintiffs' proposed discovery would not "affect" the FSIA "jurisdictional analysis," *see Livnat v. Palestinian Authority*, 82 F. Supp. 3d 19, 31 (D.D.C. 2015), and would only "frustrate the significance and benefit of entitlement to immunity from suit," *see Polak v. Int'l Monetary Fund*,

6

657 F. Supp. 2d 116, 121 (D.D.C. 2009) (citing *Crist v. Republic of Turkey*, 995 F. Supp. 5, 12 (D.D.C. 1998)).

Sovereign immunity is "an immunity from trial and the attendant burdens of litigation, and not just a defense to liability on the merits." *Phoenix Consulting, Inc. v. Republic of Angola*, 216 F.3d 36, 39 (D.C. Cir. 2000); *see also In re Papandreou,* 139 F.3d 247 (D.C. Cir. 1998) (granting writ of mandamus to bar jurisdictional discovery of foreign state). These attendant burdens of litigation include "jurisdictional discovery." *Phoenix Consulting, Inc.*, 216 F.3d at 39-40; *see also Peterson v. Islamic Republic of Iran*, 563 F. Supp. 2d 268, 274 (D.D.C. 2008) (holding that jurisdictional discovery should not be allowed when it "would be futile"); *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (holding that the "doors of discovery" do not unlock for "a plaintiff armed with nothing more than conclusions"); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (recognizing that general standards "call[] for enough fact to raise a reasonable expectation that discovery will reveal evidence" pertinent to the dispute).

Plaintiffs misplace reliance on *Factor v. Laubenheimer*, 290 U.S. 276 (1933), a very old pre-FSIA case interpreting the Webster-Ashburton Treaty of 1842. *See* Opp'n 9. That case concerns neither waivers of sovereign immunity nor discovery, let alone jurisdictional discovery, all of which are subject to the restrictive standards described above.

Plaintiffs' invocation of Section 325 of the Restatement (Third) of the Foreign Relations Law of the United States is even more inapposite. *See* Opp'n 9. Not only does Section 325 also not pertain to jurisdictional discovery under the FSIA, but the very same section explains that courts should *not* "look to supplementary means" for interpreting international agreements unless the "ordinary meaning of the text is either obscure or unreasonable." Restatement (Third) of the Foreign Relations Law of the United States § 325 cmt. e (internal quotation marks omitted); *see*

7

*also* Vienna Convention on the Law of Treaties art. 32, May 23, 1969, 1155 U.N.T.S. 331. Here, the "ordinary meaning" of the text from the SOFA is neither "obscure" nor "unreasonable" because, as previously explained, Jordan and the United States did not include any dispute resolution provisions for private plaintiffs and expressly elected to consider the question of compensation at a later point in time.

Jurisdictional discovery thus is not warranted.

## CONCLUSION

For the foregoing reasons, Jordan respectfully requests that the Court dismiss as a matter of law the claims against Jordan in their entirety with prejudice and that the Court reject Plaintiffs' request for jurisdictional discovery. Jordan expressly preserves all of its rights, privileges, immunities and defenses, including its defenses on the merits and its right to move to strike the impermissible request for punitive damages and a jury trial.

Dated: May 9, 2019                     Respectfully submitted,

**WHITE & CASE** LLP

/s/ Christopher M. Curran
Christopher M. Curran (D.C. Bar No. 408561)
Nicole Erb (D.C. Bar No. 466620)
Claire A. DeLelle (D.C. Bar No. 974945)
701 Thirteenth Street, N.W.
Washington, D.C. 20005-3807
(202) 626-3600
ccurran@whitecase.com
nerb@whitecase.com
claire.delelle@whitecase.com

*Attorneys for the Hashemite Kingdom of Jordan*