UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JAMES R. MORIARTY, *et al*,<br><br>   Plaintiffs,<br><br>  v.<br><br>HASHEMITE KINGDOM OF JORDAN, *et al*,<br><br>   Defendants. | Civil Action No. 18-2649 (CKK) |

**MEMORANDUM OPINION**
(August 6, 2019)

  This United States Foreign Sovereign Immunities Act ("FISA") case involves the deaths of three United States Army Special Forces members at the entrance to a Jordanian air base. Plaintiffs, surviving family of the service members, allege that a First Sergeant in the Jordanian military, Defendant Ma'Arek Al-Tawayha a/k/a Abu Tayeh, wrongfully killed the service members in an act of terrorism. Plaintiffs further allege that Defendant Hashemite Kingdom of Jordan ("Jordan") aided and abetted the terrorist attack.

  Defendant Jordan has filed a [11] Motion to Dismiss arguing that this Court lacks jurisdiction due to Defendant Jordan's sovereign immunity. The Court has considered the parties' submissions and has determined that Plaintiffs have not established that this Court has subject matter jurisdiction over Plaintiffs' claims against Defendant Jordan. Plaintiffs' claims against Defendant Jordan only will accordingly be DISMISSED WITH PREJUDICE.

**I. LEGAL STANDARD**

  This case implicates the Foreign Sovereign Immunities Act ("FSIA"). "The FSIA provides a basis for asserting jurisdiction over foreign nations in the United States." *Price v.*

1

*Socialist People's Libyan Arab Jamahiriya*, 294 F.3d 82, 87 (D.C. Cir. 2002). Pursuant to the FSIA, the Court has "original jurisdiction" over "nonjury civil action[s]" against foreign states "without regard to amount in controversy" if the claims seek "relief in personam with respect to which the foreign state is not entitled to immunity either under sections 1605–1607 of this title or under any applicable international agreement." 28 U.S.C. § 1330(a). "[A] foreign state is presumptively immune from the jurisdiction of United States courts; unless a specified exception applies, a federal court lacks subject-matter jurisdiction over a claim against a foreign state." *Saudi Arabia v. Nelson,* 507 U.S. 349, 355 (1993).

## II. DISCUSSION

Plaintiffs claim only one FSIA exception to Defendant Jordan's sovereign immunity. Am. Compl., ECF No. 6, ¶ 6. Under Section 1605(a)(1) of FSIA, a sovereign does not have immunity from suit in cases "in which the foreign state has waived its immunity either explicitly or by implication, notwithstanding any withdrawal of the waiver which the foreign state may purport to effect except in accordance with the terms of the waiver." 28 U.S.C. § 1605(a)(1). While FSIA does not define waiver by implication, the United States Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") has explained that it "follow[s] the virtually unanimous precedents construing the implied waiver provision narrowly." *Creighton Ltd. v. Gov. of the State of Qatar*, 181 F. 3d 118, 122 (D.C. Cir. 1999) (internal quotation marks omitted).

In order for the Court to find that Defendant Jordan has impliedly waived its sovereign immunity, Defendant Jordan must have "intended to waive its sovereign immunity." *Id.* And, Defendant Jordan must have "at some point indicated its amenability to suit" in the United States. *Princz v. Fed. Republic of Germany*, 26 F.3d 1166, 1174 (D.C. Cir. 1994). In determining what types of actions constitute an implied waiver of sovereign immunity, the D.C.

Circuit has looked to the House Report on the waiver provision of FSIA. The House Report explains that there is an intent to waive sovereign immunity "where a foreign state has agreed to arbitration in another country or where a foreign state has agreed that the law of a particular country should govern a contract. An implicit waiver would also include a situation where a foreign state has filed a responsive pleading in an action without raising the defense of sovereign immunity." H.R. Rep. No. 94-1487, at 18 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6604, 6617. While these examples are not the only acts that can show an intent to waive sovereign immunity, the D.C. Circuit has "been reluctant to stray beyond these examples when considering claims that a nation has implicitly waived its defense of sovereign immunity." *World Wide Minerals, Ltd. v. Republic of Kazakhstan*, 296 F.3d 1154, 1161 n.11 (D.C. Cir. 2002) (internal quotation marks omitted).

Here, Plaintiffs do not rely on any of the examples from the House Report to establish an implied waiver of sovereign immunity. Instead, as evidence of an implied waiver of sovereign immunity, Plaintiffs point to the Status of Forces Agreement ("SOFA") in place between Jordan and the United States. Under the SOFA, United States military personally are "accorded the same status as that provided to the technical and administrative staff of the United States Embassy and [] they may enter and exit Jordan with United States Government identification and with collective or individual travel orders." Am. Compl., ECF No. 6, ¶ 118 (quoting U.S. Embassy Note No. 261 (April 4, 1996); accepted by Jordan via MK/3/Z1/366 (April 10, 1996) (SOFA)).[1] Plaintiffs contend that the phrase "technical and administrative staff of the United

---

[1] As the SOFA was referenced in and integral to Plaintiffs' Amended Complaint, the Court may consider the SOFA for the purpose of deciding Defendant Jordan's Motion to Dismiss without "converting the motion into one for summary judgment." *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1133 (D.C. Cir. 2015); *see Am. Compl.*, ECF No. 6, ¶ 118 (quoting from the

States Embassy" is a term of art which references the Vienna Convention, to which both the United States and Jordan are parties. *Id.* at ¶ 122. Under the Vienna Convention, "technical and administrative staff" are "members of the Mission." *Id.* at ¶ 119 (citing Vienna Convention, art. 1(b); *see also* art. 1(c) and 1(f)). And, "members of the mission" are "inviolable. … The receiving State shall treat [them] with due respect and shall take all appropriate steps to prevent any attack on [their] person, freedom or dignity." *Id.* at ¶ 120 (quoting Vienna Convention, art. 29). Additionally, "the receiving State shall ensure to all members of the mission freedom of movement and travel in its territory." *Id.* at ¶ 121 (quoting Vienna Convention, art. 26).

Plaintiffs go on to explain that, under the terms of the SOFA, the murdered service members "were entitled to 'due respect' as 'members of the mission' thus creating a duty on the part of Defendant Jordan 'to take all appropriate steps to prevent any attack on [their] person, freedom or dignity' under the admonition of customary international law." *Id.* at ¶ 123. Plaintiffs further contend that "[b]y freely undertaking the obligation to accord diplomatic treatment to the members of the United States military operating in Jordan, Defendant Jordan implicitly waived its right to assert sovereign immunity when individuals within the Jordanian chain of command engaged in a deliberate attack resulting in the death of three Americans who were entitled to diplomatic protection by Defendant Jordan." *Id.* at ¶ 124.

Plaintiffs take pains to assure the Court that they are not relying on the Vienna Convention as evidence of an implied waiver of sovereign immunity. Pls.' Opp'n, ECF No. 12, 5 ("At no point have Plaintiffs argued that the Vienna Convention, as an international agreement, waives Jordan's sovereign immunity."). Plaintiffs disavowal of the Vienna Convention as

---

SOFA as the basis for the implied waiver of sovereign immunity). The SOFA is attached to Plaintiffs' Opposition as Exhibit A, ECF No. 12-2.

grounds for implied waiver is reasonable as courts have determined that sovereign immunity is not impliedly waived through alleged violations of the Vienna Convention because "the Vienna Convention make[s] no reference to a waiver of sovereign immunity." *Travel Assoc., Inc. v. Kingdom of Swaziland*, No. 89-1235, 1990 WL 134512, *2 (D.D.C. Aug. 30, 1990). Instead, Plaintiffs insist that the Vienna Convention merely "provides the definitional context for terms used in the" SOFA regarding treatment of United States service members in Jordan. Pls.' Opp'n, ECF No. 12, 5-6. According to Plaintiffs, violation of the Vienna Convention in the manner alleged constitutes a violation of the SOFA, which waives sovereign immunity. *Id.*

However, Plaintiffs fail to establish that the SOFA impliedly waived Defendant Jordan's immunity from suit. Plaintiffs provide three arguments for distinguishing the SOFA from the Vienna Convention and demonstrating its potential to waive sovereign immunity. First, Plaintiffs contends that the SOFA was an implied waiver because "it is a bilateral agreement between two countries." *Id.* at 6. While this statement is factually correct, Plaintiffs fail to explain why this fact would have any legal bearing on the Court's analysis. Courts have declined to find implied waiver in bilateral agreements just as they have declined to find implied waiver in multilateral agreements. *See Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 442-43 (1989) (declining to find implied waiver based on bilateral agreement between United States and Liberia); *Strange v. Islamic Republic of Iran*, 320 F. Supp. 3d 92, 98-99 (D.D.C. 2018) (declining to find implied waiver based on bilateral agreement between United States and Afghanistan).

Second, Plaintiffs argue that the SOFA is an implied waiver of immunity because "it sets forth how Jordan is to treat United States military personnel in Jordan in connection with their official duties." Pls.' Opp'n, ECF No. 12, 6. Again, Plaintiffs argument is factually correct. But,

5

simply establishing standards of treatment for a specified group does not imply an intent to waive sovereign immunity. *See Odhiambo v. Republic of Kenya*, 764 F.2d 31, 35 (D.C. Cir. 2014) (finding that the Convention Relating to the Status of Refugees did not impliedly waive Kenya's sovereign immunity as the "ambiguous and generic language of the Refugee Convention falls far short of the exacting showing required for waivers of foreign sovereign immunity"); *see also Gutch v. Fed. Republic of Germany*, 444 F. Supp. 2d 1, 8-9 (D.D.C. 2006) (finding no implied waiver of sovereign immunity despite previously discussing an agreement setting forth "conditions under which members of the Allied Forces reside in Germany"), *disagreed with on other grounds in Nemariam v. Fed. Democratic Republic of Ethiopia*, 491 F.3d 470 (D.C. Cir. 2007). While the SOFA does set forth general standards pertaining to the treatment of United States service members in Jordan, the Court cannot find a waiver of sovereign immunity based on merely setting "forth substantive rules of conduct." *Amerada Hess*, 488 U.S. at 442. The SOFA contains no mention of suit being brought in the United States for violations of the standards of treatment, and the Court cannot "see how a foreign state can waive its immunity under § 1605(a)(1) by signing an international agreement that contains no mention of a waiver of immunity to suit in United States courts or even the availability of a cause of action in the United States." *Id.*

Third, Plaintiffs contend that the SOFA impliedly waived Defendant Jordan's immunity because the SOFA "defines the status of these individuals in Jordan." Pls.' Opp'n, ECF No. 12, 6. But, again, defining the status of individuals in a foreign country is not sufficient to impliedly waive sovereign immunity. More is required. The SOFA does not contain any mention of how, or even whether, United States service members can enforce the SOFA's provisions. The only mention of enforcement states: "The United States Government also proposes that both

6

governments waive any and all claims (other than contractual claims) against each other for damage, loss or destruction of property arising from any official duties governed by this note. The United States government intends that the issue of compensation for damage to property or personnel shall be addressed in subsequent negotiations envisaged for the purpose of reaching an agreement on a more comprehensive bilateral Status of Forces Agreement." Ex. A, ECF No. 12-2, 3. As such, the SOFA explicitly states that any issues concerning compensation for damage to personnel are not covered by the SOFA. Far from impliedly consenting to suit in the United States, the SOFA appears to disclaim any possible enforcement mechanisms. In relying on the SOFA, Plaintiffs fail to make the "exacting showing" required for a foreign sovereign to "indicate[] its amenability to suit." *Strange*, 320 F. Supp. 3d at 98 (internal quotation marks omitted).

Perhaps recognizing the weaknesses of the SOFA, Plaintiffs argue that the Court should employ the "canon against surplusage" in interpreting the SOFA. Pls.' Opp'n, ECF No. 12, 7. But, Plaintiffs fail to identify any surplus language in the SOFA. *See Freeman v. Quicken Loans, Inc.*, 566 U.S. 624, 635 (2012) (explaining that the canon against surplusage avoids treating words and terms as extraneous). Instead, Plaintiffs claim that the SOFA imposes a duty on Defendant Jordan to treat United States service members in a particular way and "such a duty without a corresponding remedy would render the Agreement meaningless." Pls.' Opp'n, ECF No. 12, 7. However, even assuming that the SOFA must have some sort of remedy for violations, Plaintiffs present no evidence that the remedy must necessarily be suit in the United States by private individuals. International agreements can impose duties which cannot be enforced through private litigation and instead can be enforced only through diplomacy or other state mechanisms. *See In re Iraq & Afg. Detainees Litig.*, 479 F. Supp. 2d 85, 116 (D.D.C. 2007)

(explaining that "international agreements, even those directly benefiting private persons, generally do not create private rights or provide for a private cause of action in domestic courts" (quoting Restatement (Third) of the Foreign Relations Law of the United States § 907 cmt. a (1987)). Because the general duties imposed on Defendant Jordan under the SOFA do not necessitate amenability to suit in the United States, the SOFA did not implicitly waive Defendant Jordan's sovereign immunity. *See Amerada Hess*, 488 U.S. at 442 (explaining that an international agreement setting forth a code of conduct did not implicitly waive sovereign immunity).

Finally, Plaintiffs ask that the Court grant limit discovery for purposes of establishing jurisdiction under the SOFA. Plaintiffs state that "the perspectives of the United States and Jordan through the negotiation process may provide more light on the intent by Jordan to waive its immunity where the diplomatic status of U.S. military personnel in Jordan is violated and the availability of American courts to adjudicate these disputes." Pls.' Opp'n, ECF No. 12, 9. Plaintiffs assert that jurisdictional discovery would likely be "limited to seeking copies of diplomatic communications from both the Jordanian government and the U.S. Government relating to the discussion held between the two countries resulting in the drafting of the proposal that became the Agreement." *Id.* at 10.

The Court concludes that jurisdictional discovery is not appropriate in these circumstances. Defendant Jordan's sovereign immunity entitles it to "an immunity from trial and the attendant burdens of litigation, and not just a defense to liability on the merits." *Phoenix Consulting, Inc. v. Republic of Angola,* 216 F.3d 36, 39 (D.C. Cir. 2000) (internal quotation marks omitted). In preserving Defendant Jordan's right to sovereign immunity, the court must determine its "own jurisdiction as early in the litigation as possible." *Id.* Here, engaging in

jurisdictional discovery would "frustrate the significance and benefit of entitlement to immunity from suit." *Id.*

"[J]urisdictional discovery should be granted only if the plaintiff presents non-conclusory allegations that, if supplemented with additional information, will materially affect the court's analysis with regard to the applicability of the FSIA." *Crist v. Republic of Turkey*, 995 F. Supp. 5, 12 (D.D.C. 1998). The Court finds the meaning of the SOFA is unambiguous and apparent absent discovery. The SOFA contains no mention of enforcement, much less mention of "a waiver of immunity to suit in United States courts or even the availability of a cause of action in the United States." *Amerada Hess*, 488 U.S. at 442. Moreover, the SOFA explicitly states that the "issue of compensation for damage to property or personnel shall be addressed in subsequent negotiations." Ex. A, ECF No. 12-2. Plaintiffs provide no more than conjecture and surmise in support of their argument that jurisdictional discovery into the negotiation process leading up to the SOFA will produce facts showing that, contrary to express language in the SOFA, Defendant Jordan intended to submit itself to litigation in the United States for damage or death to United States military personnel.

### III. CONCLUSION

The Court is sympathetic to Plaintiffs' enormous loss. However, no matter how great the loss, Plaintiffs cannot bring suit against Defendant Jordan absent an exception to Defendant Jordan's sovereign immunity. Plaintiffs propose only one exception to sovereign immunity under FISA, and Plaintiffs have failed to establish that Defendant Jordan impliedly waived its sovereign immunity by becoming party to the SOFA. Accordingly, the Court lacks subject matter jurisdiction over claims brought against Defendant Jordan. Those claims only will be

DISMISSED WITH PREJUDICE.  An appropriate Order accompanies this Memorandum Opinion.

                                                                                /s/  
                                           COLLEEN KOLLAR-KOTELLY  
                                           United States District Judge