UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| JAMES R. MORIARTY, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 18-cv-2649 (CKK) |
| THE HASHEMITE KINGDOM OF, JORDAN *et al.*, | ) ) ) ) | |
| Defendants. | ) ) ) | |

**MEMORANDUM OPINION AND ORDER**

Presently pending before the Court is Plaintiffs' motion seeking to execute service of process by publication on Defendant Ma'arek Al-Tawayha a/k/a Abu Tayeh ("Abu Tayeh"). ECF No. 41. The motion was referred to the undersigned for resolution on July 18, 2023. ECF No. 42. After a thorough review of Plaintiffs' motion and the record,[1] the undersigned **DENIES** the motion without prejudice.

## I.   BACKGROUND

### A.   Procedural History

Plaintiffs are the family members of three U.S. Army Special Forces members—James Moriarty, Matthew Lewellen, and Kevin McEnroe—who were killed on November 4, 2016, during an ambush as they entered a Jordanian air base that was home to the American military during operations opposing the regime of Bashar al-Asad in Syria. ECF No. 6, ¶¶ 1–4. The perpetrator,

---

[1] The relevant docket entries to this Memorandum Opinion and Order are (1) Plaintiffs' Amended Complaint, (ECF No. 6), (2) Plaintiffs' Motion for Leave to Execute Service of Process by Publication (ECF No. 41), (3) Minute Order (Aug. 28, 2023), and (4) Plaintiffs' response to the Minute Order (ECF No. 43). Citations to page numbers herein reflect the pagination assigned by the Court's Electronic Case Filing system.

Defendant Abu Tayeh, was a member of the Jordanian military on duty at the entrance to the base who opened fire in an unprovoked attack on the Special Forces members as they entered the base. *Id.*, ¶ 3.

Plaintiffs bring this action seeking to recover damages for the wrongful deaths of their loved ones. ECF No. 1 at 34; ECF No. 41 at 1. In February 2019, Plaintiffs filed the Amended Complaint against Abu Tayeh and the Hashemite Kingdom of Jordan ("Jordan"), which Plaintiffs allege aided and abetted the attack. ECF No. 6, ¶¶ 4, 12. Plaintiffs allege that Abu Tayeh was criminally prosecuted in Jordan for the attack and was convicted in July 2017 of "manslaughter, for killing more than one person and for violating military orders and regulations." *Id.*, ¶ 12. Abu Tayeh was sentenced to life in prison, and he is believed to be in prison in Jordan. *Id.*, ¶ 12 & n.2. In June 2019, Plaintiffs filed a request for the issuance of letters rogatory requesting that Jordan serve the Amended Complaint on Abu Tayeh in prison. ECF No. 14. That request was granted by the Court the following month. ECF Nos. 17, 18. Shortly thereafter, the claims against the Jordan were dismissed with prejudice. ECF No. 19.

According to a representative of the Department of State, the letters rogatory were delivered to Jordan via diplomatic channels in early September 2019. ECF No. 21 at 2. Thereafter, believing they had located Abu Tayeh at Suwaqa Prison[2] in Jordan, Plaintiffs attempted to serve him personally in the prison in October 2019 through a process server. *Id.* That attempt was unsuccessful because the prison guards would not allow the process server to serve an individual prisoner directly and would not accept service on a prisoner's behalf. *Id.* Because the

---

[2] In their current motion, Plaintiffs state that they do not know where or even whether Abu Tayeh is presently incarcerated. ECF No. 41 at 3 ("While personal service is generally achievable in Jordan, the fact of Defendant Abu Tayeh's incarceration, and the lack of information regarding the location of his incarceration, makes such personal service impossible."); ECF No. 41-1, ¶ 9 ("[A] search of prison [facilities] was conducted, including Suwaga Prison . . . Result: Could not confirm that Abu Tayeh was incarcerated in any of the prison facilities.").

2

attempt was unsuccessful, Plaintiffs concluded that their efforts to serve Defendant Abu Tayeh were "constrained to the Letters Rogatory process." *Id.*

Twenty months later, in August 2021, Plaintiffs reported to the Court that an attorney at the Department of State had been told that Abu Tayeh had been served by Jordanian authorities but that Jordan's formal response to the letters rogatory was delayed by the COVID-19 pandemic. ECF No. 33 at 1–2. To date, Jordan's formal response has yet to be received.[3] ECF Nos. 34, 35. Thus, Plaintiffs concede that while "[i]t is likely that [Abu Tayeh] has received actual notice of the lawsuit through the letters rogatory process[,] . . . with a lack of a formal response from the Jordanian authorities, this cannot be verified, and the case cannot proceed" on that basis. ECF No. 41 at 3. Other methods of service having proven unsuccessful, Plaintiffs now seek leave to effect service on Abu Tayeh by publication. ECF Nos. 37, 38, 39, 40.

B.  **Motion for Leave to Execute Service of Process by Publication**

In their motion, Plaintiffs request to serve Abu Tayeh by publication pursuant to Federal Rule of Civil Procedure 4(f)(3). In the first paragraph of their motion, Plaintiffs propose publishing notice "in one national newspaper of general circulation in Jordan" as well as through a website entitled Global Legal Notices, LLC ("Global Legal Notices"). ECF No. 41 at 1. Plaintiffs' inclusion of service in a Jordanian newspaper in the first paragraph in their motion appears to be

---

[3] That said, in June 2022, Plaintiffs received an email from the Department of State stating that the American Embassy in Amman had conveyed that "our only letters rogatory on file were received at the Embassy in August 2020, and per the Jordanian Ministry of Foreign Affairs, were delivered to [Abu Tayeh] on January 23, 2021." ECF No. 36-1 at 2. Appended to that email was a July 26, 2021 letter, written in Arabic, which states, in relevant part, that "[t]he Ministry would like to inform you that the Embassy has been notified by [a] memorandum . . . dated 05/18/2021 regarding informing [Abu Tayeh] of the civil case filed against him on 01/23/2020 and that the delay in reply is due to the exceptional circumstances resulting from Covid-19 global pandemic." ECF No. 36-2 at 3. Plaintiffs do not argue that any of those communications serve as formal notice of service of process by Jordanian authorities of Abu Tayeh. ECF No. 41 at 3 (Plaintiffs asserting that "service through the letters rogatory process has proven futile in the sense that Plaintiffs' counsel has been unable to obtain actual and verifiable information from the Office of the Legal Adviser on the status of service of process, and attempts to obtain additional information from the U.S. Embassy in Amman, Jordan or the Jordanian Ministry of Foreign Affairs have proven unfruitful in obtaining the requisite formal notice of service."); *see also id.* at 7 (describing how the letters rogatory process has "languished for four years").

an error. Their motion makes no further mention of that method of publication and omits any reference to it in the motion's closing paragraph which seeks only publication through the Global Legal Notices website. *Id.* at 8–9. Further, in arguing in favor of publication on the website, Plaintiffs rely on the declaration of Nelson Tucker, an experienced international process server, which asserts that "newspapers in Jordan will not publish legal notices which originate in the United States." ECF No. 41 at 7 (quoting ECF No. 41-1, ¶ 15). Seeking to clarify the matter, the Court ordered Plaintiffs to respond in writing whether they were in fact seeking service by publication through a Jordanian newspaper as stated in the first paragraph of their motion. *See* Minute Order (Aug. 28, 2023). Plaintiffs filed their belated response on September 5, 2023, asserting that they only seek to publish notice on the Global Legal Notices website. ECF No. 43. Accordingly, the Court deems Plaintiffs to have abandoned any proposal to pursue service through publication in a Jordanian newspaper, if indeed they intended to propose that method of service in the first place.

Instead, Plaintiffs propose publishing notice of the suit on the Global Legal Notices website, which is described as "a website of general circulation which specializes in international service by publication in Jordan." ECF No. 41 at 8. Plaintiffs seek to publish notice in Arabic and English at least once a week for six successive weeks. *Id.* at 8–9. Because the Global Legal Notices website can be accessed "through traditional internet search engines from a smartphone or computer," Plaintiffs assert that it "allows for a greater opportunity to give actual notice to the Defendant[] than service by publication in a traditional newspaper." *Id.* at 8.

## II. LEGAL STANDARDS

Rule 4(f)(3) provides that a foreign individual may be served by "means not prohibited by international agreement, as the court orders." Fed. R. Civ. P. 4(f)(3). That includes, in certain

4

circumstances, service by publication. *See Mwani v. bin Laden*, 417 F.3d 1, 8 (D.C. Cir. 2005). Service permitted under Rule 4(f)(3) must comport with the notions of due process by being "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Kurd v. Republic of Turkey*, No. 18-cv-1117, 2018 WL 11248032, at *2 (D.D.C. Dec. 19, 2018) (citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)); *see also Strange v. Islamic Republic of Iran*, No. 14-cv-435, 2019 WL 13158028, at *2 (D.D.C. June 4, 2019). More, the Advisory Committee Notes state that "an earnest effort should be made to devise a method of communication that is consistent with due process and minimizes offense to foreign law." Fed. R. Civ. P. 4(f) advisory committee's note to 1993 amendment; *see also Freedom Watch, Inc. v. Org. of the Petroleum Exporting Countries*, 766 F.3d 74, 82 (D.C. Cir. 2014). "[T]he decision whether to allow alternative methods of serving process under Rule 4(f)(3) is committed to the 'sound discretion of the district court.'" *Freedom Watch, Inc., v. OPEC*, 766 F.3d 74, 81 (D.C. Cir. 2014) (quoting *Brockmeyer v. May*, 383 F.3d 798, 805 (9th Cir. 2004)).

### III. DISCUSSION

The Supreme Court has sanctioned service by publication "where it is not reasonably possible or practicable to give more adequate warning," finding that, "in the case of persons missing or unknown, employment of an indirect and even a probably futile means of notification is all that the situation permits and creates no constitutional bar to a final decree foreclosing their rights." *Mullane*, 339 U.S. at 317. However, as stated above, service must also comport with constitutional notions of due process, which requires service to be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* at 314. Courts have accordingly granted leave to

serve by publication only where the proponents of that service can provide some assurance that the defendant can be reasonably expected to receive actual notice. *Compare Aboulgaed v. Hifter*, No. 20-cv-298, 2020 WL 12765270, at *1 (D.D.C. Apr. 28, 2020) (hereinafter "*Aboulgaed I*") (permitting service by publication where the plaintiffs proposed published notices in two national Libyan newspapers and three television stations that were "read and watched by the general population," and where the spokesperson for the defendants' organization appeared to "base his daily news briefings" on the proposed publications); *with Aljabri v. Al Saud*, No. 20-cv-2146, 2021 WL 6775587, at *1 (D.D.C. Feb. 12, 2021) (denying leave to serve by publication where the plaintiffs proposed to serve a defendant incarcerated in Saudi Arabia via mail to the Office of the Presidency of State Security because "it provides little assurance that [the defendant] will receive actual notice and does not appear to be authorized by law in the Kingdom of Saudi Arabia"); *and Strange*, 2019 WL 13158028, at *2–3 (D.D.C. June 4, 2019) (denying leave to serve by publication where the plaintiffs sought to serve via Twitter, absent any evidence that the defendant, a public figure, personally interacted on the website such that he would notice a single tweet from a stranger). When a court considers a proposal to publish service on an internet medium, "the efficacy of this service turns on a fact-bound inquiry into the prominence of the platforms used and the defendant's activity-level on those sites." *Aboulgaed v. Hifter*, No. 20-cv-298, 2021 WL 5893168, at *2 (D.D.C. May 28, 2021) (hereinafter "*Aboulgaed II*").

In this case, the undersigned agrees with Plaintiffs that the proposed method of service would not violate any international agreements.[4]  *See* ECF No. 41 at 4.  However, Plaintiffs have not demonstrated that their proposed method of service is reasonably calculated to provide actual

---

[4] "Jordan is not a signatory to the Hague Service Convention, an international agreement that governs service of process over foreign citizens." *United States ex rel. Barko v. Halliburton Co.*, 952 F. Supp. 2d 108, 117 (D.D.C. 2013); *see also Status Table*, Hague Conf. on Private Int'l L., https://perma.cc/228A-AFRP (last visited Sept. 6, 2023) (listing signatories to the Hague Service Convention, which do not include the country of Jordan).

notice to the Defendant.  Plaintiffs propose publishing notice of this lawsuit in Arabic which would "direct the reader to a website where the Amended Complaint and other court documents may be reviewed and downloaded in both Arabic and English." *Id*. at 8.  The notice would be published at least once a week, for six successive weeks, on Global Legal Notices, which is an "international service by publication firm" that "publish[es] in every country in the world."  ECF No. 41 at 8; *Global Legal Notices*, https://perma.cc/KW9B-8EM5 (last visited Sept. 6, 2023).  On its webpage, Global Legal Notices provides the following concerning service in Jordan: "We are the only legal notice publication in the world with the ability for defendants to Google their own name and find a legal case filed against them.  Further, if a defendant somehow accidentally discovered our website and entered their name in the search box, the case information would be revealed." *Jordan*, Global Legal Notices, https://perma.cc/22FL-4VQS (last visited Sept. 6, 2023).  Based on these representations, it appears that for a defendant to receive notice through this website, the defendant would have to have access to the internet and either seek out this website specifically or search his own name on the internet and happen upon the website as a result.

On this record, Plaintiffs have not provided reasonable assurance that Defendant Abu Tayeh has the internet access necessary to possibly receive notice through the website, or, even if he did, that there was a reasonable probability that he would encounter the notice on the website through his use of the internet.  *See generally* ECF No. 41; *see also Browne v. Donalds*, No. 21-cv-02840, 2023 WL 4626697, at *7 (C.D. Cal. Apr. 13, 2023) (finding that the plaintiffs had not demonstrated that email service was reasonably calculated to provide actual notice to a defendant incarcerated in federal prison because they did not address the defendant's "ability to access email under the circumstances"); *In re BitConnect Sec. Litig.*, No. 18-cv-80086, 2019 WL 9104288, at *2 (S.D. Fla. Dec. 20, 2019) (finding that the plaintiffs had not provided adequate information

7

regarding whether service by registered mail to individuals incarcerated in Indian prisons would be reasonably calculated to provide actual notice). The record here contains "little to no information addressing the [Defendant's] online presence or the viability of the selected internet mediums." *Aboulgaed II*, 2021 WL 5893168, at *2; *see also Strange*, 2019 WL 13158028, at *5.

Unsurprisingly, prior attempts in other cases at service through the Global Legal Notices website have similarly run aground. Courts have repeatedly declined to permit such service as there was insufficient showing that publication on the Global Legal Notices website, on its own, could reasonably be expected to reach a defendant. *See Caballero v. Ejercito de Liberacion Nacional*, No. 18-cv-25337, 2019 WL 11505370, at *3 (S.D. Fla. Nov. 21, 2019), (recommending denial of leave to use Global Legal Notices to serve incarcerated defendant in Colombia because plaintiffs provided no evidence that the website could be reasonably expected to provide notice to the defendant or why it would be reasonable to expect the incarcerated defendant to access the website), *report and recommendation adopted*, 2019 WL 11505372 (S.D. Fla. Dec. 11, 2019); *In re Qiwi PLC Sec. Litig.,* No. 20-cv-6054, 2023 WL 5279301, at *5 (E.D.N.Y. Aug. 15, 2023) (denying leave to serve a defendant via Global Legal Notices only because the Court "lack[ed] information about whether service through" Global Legal Notices "can be reasonably expected to reach [the] defendant"); *United Fin. Cas. Co. v. R.U.R. Transporation, Inc*., No. 22-cv-333, 2022 WL 16747283, at *4–5 (S.D. Cal. Nov. 7, 2022) (finding that the plaintiffs had not provided any evidence that service through publication on Global Legal Notices could be reasonably expected to reach the defendant, including whether the website had successfully providing notice in past cases in Mexico, how much traffic the website receives, or whether it would be reasonable to expect the defendant to visit or be aware of the website). Those cases which have permitted service through the Global Legal Notices website did so only in conjunction with notice in a national

newspaper of general circulation. *See Langford v. Cartel*, No. 1:20-CV-132, 2020 WL 12969220, at *2 (D.N.D. Oct. 28, 2020) (approving use of Global Legal Notices in conjunction with notice in a national newspaper of general circulation in Mexico to serve a member of a cartel who posed danger to traditional process servers); *Miller v. Cartel*, No. 20-cv-132, 2020 WL 12969219, at *2 (D.N.D. Sept. 18, 2020) (same). Again, Plaintiffs are not seeking publication of notice in a national newspaper in Jordan here.

The cases cited by Plaintiffs in support of their request are similarly distinguishable. Each of those cases approved service of process by publication in a national newspaper likely to be read by the defendants at issue, none of whom were incarcerated, and none for them considered service through the Global Legal Notice website. *See Mwani v. bin Laden*, 417 F.3d 1, 8 (D.C. Cir. 2005) (approving the district court's grant of leave to serve Osama bin Laden and Al Qaeda by publication in the same newspaper where Al Qaeda also published religious decrees); *SEC v. Tome*, 833 F.2d 1086, 1093 (2d Cir. 1987) (granting leave to serve by publication in a newspaper in circulation where defendants resided in Europe, where the publication was "likely to be read by international investors" like the defendants); *BP Prods. N. Am. v. Dagra*, 236 F.R.D. 270, 273 (E.D. Va. 2006) (granting leave to serve by publication in two Pakistani newspapers of wide circulation where the defendant was last known to live in Pakistan, and defendant, who had owned businesses in the United States, was on notice that he had personally guaranteed $12 million in loans now in default and could be subject to a lawsuit); ; *Mwani. v. Al Baraka Inv. and Dev. Corp.*, No. 02-cv-1616 (Minute Entry, Mar. 25, 2003) (approving proposal to serve Osama Bin Laden with the same publication approved in *Mwani* in 1999); *Havlish v. Sheik Bib-Muhammad Bin-Laden*, No. 02-cv-00305 (Minute Entry, May 9, 2002) (same). Again, Plaintiffs are not seeking to publish notice in a national Jordanian newspaper; indeed, they rely on the declaration of an

experienced international process service that "newspapers in Jordan will not publish legal notices which originate in the United States." ECF No. 41-1 at 4; *see also* ECF No. 43 ("After consulting with the requisite individuals at Global Legal Notices, undersigned counsel submits that the proposal is to publish notice of the lawsuit in Global Legal Notices LLC (via the internet) only.").

The Court therefore "concludes that the factual circumstances of this case fail to establish" that service as proposed by Plaintiffs "would be reasonably likely to apprise [Defendant] of this lawsuit." *Strange*, 2019 WL 13158028, at *5; *see also Caballero*, 2019 WL 11505370 ("The undersigned concludes that the service Plaintiff proposes is tantamount to no service at all in that it is nothing more than posting information on a website that has no connection to [the defendant].").[5] Accordingly, Plaintiff's motion will be denied without prejudice.[6]

## IV. CONCLUSION

For the reasons stated above, it is hereby ORDERED that Plaintiffs' motion for leave to serve Defendant Abu Tayeh by publishing a notice on Global Legal Notices, ECF No. 41, is DENIED WITHOUT PREJUDICE.

SO ORDERED.

Date: September 6, 2023

_____
G. Michael Harvey
United States Magistrate Judge

---

[5] Because the undersigned finds that the proposed method of service does not comport with constitutional notions of due process, the issue of whether the proposed method of service minimizes offense to foreign law is not addressed.

[6] This motion is denied without prejudice to Plaintiffs' ability to file a new motion seeking leave to execute service of process by alternative means. In a new motion, Plaintiffs could provide, if possible, evidence of Defendant's access to Global Legal Notices or the internet in general, or a proposal to publish notice in a national newspaper of general circulation in Jordan. In the meantime, Plaintiffs may continue to pursue the letters rogatory process, which could include submitting to Jordan a new letters rogatory request for personal service on Abu Tayeh.