## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| JAMES R. MORIARTY, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 18-cv-2649 (CKK) |
| | ) | |
| THE HASHEMITE KINGDOM OF, | ) | |
| JORDAN *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

### MEMORANDUM OPINION AND ORDER

Presently pending before the Court is Plaintiffs' renewed motion seeking to execute service of process by publication on Defendant Ma'arek Al-Tawayha a/k/a Abu Tayeh ("Abu Tayeh"). ECF No. 48. The motion was referred to the undersigned for resolution on July 18, 2023. ECF No. 42. After a thorough review of Plaintiffs' motion and the record,[1] the undersigned **GRANTS** the motion.

### I.     BACKGROUND

#### A.     Procedural History

Plaintiffs are the family members of three U.S. Army Special Forces members—James Moriarty, Matthew Lewellen, and Kevin McEnroe—who were killed on November 4, 2016, during an ambush as they entered a Jordanian air base that was home to the American military during operations opposing the regime of Bashar al-Asad in Syria. ECF No. 6, ¶¶ 1–4. The

---

[1] The docket entries relevant to this Memorandum Opinion and Order are: (1) Plaintiffs' Amended Complaint, ECF No. 6; (2) Plaintiffs' Motion for Leave to Execute Service of Process by Publication, ECF No. 41; (3) Minute Order (Aug. 28, 2023); (4) Plaintiffs' response to the Minute Order. ECF No. 43; (5) Memorandum Opinion and Order denying ECF No. 41 without prejudice, ECF No. 44; and (6) Plaintiffs' Renewed Motion for Leave to Execute Service of Process by Publication, ECF No. 48. Citations to page numbers herein reflect the pagination assigned by the Court's Electronic Case Filing system.

Amended Complaint alleges that the perpetrator, Defendant Abu Tayeh, was a member of the Jordanian military on duty at the entrance to the base who opened fire in an unprovoked attack on the Special Forces members as they entered the base. *Id.*, ¶ 3.

Plaintiffs bring this action seeking to recover damages related to the wrongful deaths of their loved ones. ECF No. 6 at 20–27. In February 2019, Plaintiffs filed the Amended Complaint against Abu Tayeh and the Hashemite Kingdom of Jordan ("Jordan"), which Plaintiffs allege aided and abetted the attack. *Id.*, ¶¶ 4, 12. Plaintiffs allege that Abu Tayeh was criminally prosecuted in Jordan for the attack and was convicted in July 2017 of "manslaughter for killing more than one person and for violating military orders and regulations." *Id.*, ¶ 12. Abu Tayeh was sentenced to life in prison, and he is believed to be in prison in Jordan. *Id.*, ¶ 12 & n.2. In June 2019, Plaintiffs filed a request for the issuance of letters rogatory requesting that Jordan serve the Amended Complaint on Abu Tayeh in prison. ECF No. 14. That request was granted by the Court the following month. ECF Nos. 17, 18. Shortly thereafter, the claims against Jordan were dismissed with prejudice. *See generally Moriarty v. Hashemite Kingdom of Jordan*, No. 18-cv-2649, 2019 WL 3593169 (D.D.C. Aug. 6, 2019).

According to a representative of the Department of State, the letters rogatory were delivered to Jordan via diplomatic channels in early September 2019. ECF No. 21 at 2. Thereafter, believing they had located Abu Tayeh at Suwaqa Prison[2] in Jordan, Plaintiffs attempted to serve him personally in the prison in October 2019 through a process server. *Id.* That attempt was unsuccessful because the prison guards would neither permit the process server to serve an

---

[2] In their current motion, Plaintiffs state that they do not know where or whether Abu Tayeh is presently incarcerated. ECF No. 48 at 3 ("While personal service is generally achievable in Jordan, the fact of Defendant Abu Tayeh's incarceration, and the lack of information regarding the location of his incarceration, makes such personal service impossible."); ECF No. 41-1, ¶ 9 ("[A] search of prison [facilities] was conducted, including Suwaga Prison . . . . Result: Could not confirm that Abu Tayeh was incarcerated in any of the prison facilities.").

individual prisoner directly nor accept the service on Abu Tayeh's behalf.  *Id*.  Because the attempt

was unsuccessful, Plaintiffs concluded their efforts to serve Defendant Abu Tayeh were

"constrained to the Letters Rogatory Process."  *Id*.

Twenty months later, in August 2021, Plaintiffs reported to the Court that an attorney at

the Department of State had been told that Abu Tayeh had been served by Jordanian authorities

but that Jordan's formal response to the letters rogatory was delayed by the COVID-19 pandemic.

ECF No. 33 at 1–2.  To date, Jordan's formal response has yet to be received.[3]  ECF Nos. 34, 35.

Thus, Plaintiffs concede that while "[i]t is likely that [Abu Tayeh] has received actual notice of

the lawsuit through the letters rogatory process, . . . with a lack of formal response from the

Jordanian authorities, this cannot be verified, and the case cannot proceed" on that basis.  ECF No.

48 at 3–4. With other methods of service having proven unsuccessful, Plaintiffs sought leave to

effect service on Abu Tayeh by publication in June 2023.  ECF Nos. 37–41.

In their initial motion, Plaintiffs requested to serve Abu Tayeh by publication through a

website entitled Global Legal Notices, LLC ("Global Legal Notices").  ECF No. 41 at 1.  In the

first paragraph of the motion, Plaintiffs also stated that they would effect service through

publication of a legal notice in "one national newspaper of general circulation" in Jordan.  ECF

No. 41 at 1.  In arguing in favor of publication through Global Legal Notices, Plaintiffs relied on

---

[3] That said, in June 2022, Plaintiffs received an email from the Department of State stating that the American Embassy in Amman had conveyed that "our only letters rogatory on file were received at the Embassy in August 2020, and per the Jordanian Ministry of Foreign Affairs, were delivered to [Abu Tayeh] on January 23, 2021."  ECF No. 36-1 at 2. Appended to that email was a July 26, 2021 letter, written in Arabic, which states, in relevant part, that "[t]he Ministry would like to inform you that the Embassy has been notified by [a] memorandum . . . dated 05/18/2021 regarding informing [Abu Tayeh] of the civil case filed against him on 01/23/2020 and that the delay in reply is due to the exceptional circumstances resulting from Covid-19 global pandemic."  ECF No. 36-2 at 3. Plaintiffs do not argue that any of those communications serve as formal notice of service of process by Jordanian authorities of Abu Tayeh.  ECF No. 48 at 3 (Plaintiffs asserting that "service through the letters rogatory process has proven futile in the sense that Plaintiffs' counsel has been unable to obtain actual and verifiable information from the Office of the Legal Adviser on the status of service of process, and attempts to obtain additional information from the U.S. Embassy in Amman, Jordan or the Jordanian Ministry of Foreign Affairs have proven unfruitful in obtaining the requisite formal notice of service."); *see also* ECF No. 41 at 7 (describing how the letters rogatory process has "languished for four years").

the declaration of Nelson Tucker, an experienced international process server, which asserted that "newspapers in Jordan will not publish legal notices which originate in the United States."  ECF No. 41 at 7 (quoting ECF No. 41-1, ¶ 15).  Because of this discrepancy, the Court ordered Plaintiffs to respond in writing to clarify whether they were in fact seeking service by publication through a Jordanian newspaper.  *See* Minute order (Aug. 28, 2023).  Plaintiffs filed their response in September 2023, asserting they were seeking to publish notice only through the Global Legal Notices website.  ECF No. 43. Plaintiffs stated that they would publish notice on that website in both Arabic and English at least once a week for six successive weeks.  ECF No. 41 at 8–9.

In a Memorandum Opinion and Order on September 6, 2023, this Court denied Plaintiffs' motion without prejudice, stating that publishing through Global Legal Notices alone with any reasonable assurance that Defendant Abu Tayeh had internet access in prison was not reasonably calculated to provide actual notice of this case to him.  *See Moriarty v. Hashemite Kingdom of Jordan*, No. 18-cv-2649, 2023 WL 5748566, at \*4–5.  This Court further suggested that publication in a print newspaper in Jordan in tandem with publication on Global Legal Notices website may potentially achieve effective service.  *See id.* at \*5.  On March 20, 2024, Plaintiffs filed a renewed motion for leave to execute service on Abu Tayeh, this time through publication online on the Global Legal Notices website and in a Jordanian newspaper, *Ad-Dustour*.  ECF Nos. 44, 48.

### A.    Renewed Motion for Leave to Execute Service of Process by Publication

In their renewed motion, Plaintiffs again request to serve Abu Tayeh by publication pursuant to Federal Rule of Civil Procedure 4(f)(3), this time through publication on the Global Legal Notices website as well as "in *Ad-Dustour*, a newspaper in Jordan with a large circulation" in that country.  ECF No. 48 at 1.  Since the denial of their initial motion, Plaintiffs engaged with

Elaine Pang, the Vice President of Media with A.B. Data, Ltd.'s Class Action Administration Division, who reached out to multiple wide-circulation newspapers in Jordan to determine whether and where notice could be placed.  ECF No. 48 at 8.  Ms. Pang was able to obtain preliminary approval from *Ad-Dustour*, a daily national newspaper with a circulation of 284,393.  *Id*.  Plaintiffs seek to publish notice in Arabic in *Ad-Dustour* once a week for four successive weeks.  *Id*.  Because *Ad-Dustour* is partly state-owned, Plaintiffs contend that this newspaper may be available to the prison population where Abu Tayeh is incarcerated.  *Id*.  Furthermore, in addition to publishing a print edition daily, *Ad-Dustour* operates a website that provides virtual access to the daily print edition free of charge.  *Id.* at 8–9.  Plaintiffs also propose publishing the Amended Complaint and Summons in both English and Arabic on Global Legal Notices website, and Plaintiffs' published notice in *Ad-Dustour* would provide a link to Global Legal Notices that will remain active throughout the publication period.  *Id*.

## II.   LEGAL STANDARDS

Rule 4(f)(3) provides that a foreign individual may be served by "means not prohibited by international agreement, as the court orders."  Fed. R. Civ. P. 4(f)(3).  That includes, in certain circumstances, service by publication.  *See Mwani v. bin Laden*, 417 F.3d 1, 8 (D.C. Cir. 2005).  Service permitted under Rule 4(f)(3) must comport with the notions of due process by being "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Kurd v. Republic of Turkey*, No. 18-cv-1117, 2018 WL 11248032, at *2 (D.D.C. Dec. 19, 2018) (citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)); *see also Strange v. Islamic Republic of Iran*, No. 14-cv-435, 2019 WL 13158028, at *2 (D.D.C. June 4, 2019).  More, the Advisory Committee Notes state that "an earnest effort should be made to devise a method of communication

that is consistent with due process and minimizes offense to foreign law." Fed. R. Civ. P. 4(f) advisory committee's note to 1993 amendment; *see also Freedom Watch, Inc. v. Org. of the Petroleum Exporting Countries*, 766 F.3d 74, 82 (D.C. Cir. 2014). "[T]he decision whether to allow alternative methods of serving process under Rule 4(f)(3) is committed to the 'sound discretion of the district court.'" *Freedom Watch, Inc., v. OPEC*, 766 F.3d 74, 81 (D.C. Cir. 2014) (quoting *Brockmeyer v. May*, 383 F.3d 798, 805 (9th Cir. 2004) ).

## III.   DISCUSSION

The Supreme Court has permitted service by publication "where it is not reasonably possible or practicable to give more adequate warning," finding that, "in the case of persons missing or unknown, employment of an indirect and even a probably futile means of notification is all that the situation permits and creates no constitutional bar to a final decree foreclosing their rights." *Mullane*, 339 U.S. at 317. That appears to be the case here as Defendant Abu Tayeh is essentially missing. Convicted for the death of Plaintiffs' family members, he is incarcerated somewhere in Jordan in a prison which Plaintiffs have been unable to identify despite best efforts. ECF No. 41-1, ¶ 9; ECF No. 48 at 3. Unsurprisingly, traditionally methods of service—which Plaintiffs have attempted—have been unsuccessful.[4] Service by publication is permitted in such cases where it is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* at 314; *compare Aboulgaed v. Hifter*, No. 20-cv-298, 2020 WL 12765270, at *1 (D.D.C. Apr. 28, 2020) (permitting service by publication where the plaintiffs proposed published notices in two national Libyan newspapers and three television stations that were "read and watched by the

---

[4] As noted, Plaintiffs attempted personal service on Abu Tayeh in prison, but service was rejected by the prison guards. ECF No. 48 at 3. Plaintiffs then attempted to serve Abu Tayeh through the letters rogatory process, but it has "languished for years" due to the COVID-19 pandemic and they have not received formal response from the Jordanian Ministry of Foreign Affairs. ECF No. 41 at 7; ECF No. 48 at 2.

general population," and where the spokesperson for the defendants' organization appeared to "base his daily news briefings" on the proposed publications); *with Aljabri v. Al Saud*, No. 20-cv-2146, 2021 WL 6775587, at *1 (D.D.C. Feb. 12, 2021) (denying leave to serve by publication where the plaintiffs proposed to serve a defendant incarcerated in Saudi Arabia via mail to the Office of the Presidency of State Security because "it provides little assurance that [the defendant] will receive actual notice and does not appear to be authorized by law in the Kingdom of Saudi Arabia"); *and Strange*, 2019 WL 13158028, at *2–3 (D.D.C. June 4, 2019) (denying leave to serve by publication where the plaintiffs sought to serve via Twitter, absent any evidence that the defendant, a public figure, personally interacted on the website such that he would notice a single tweet from a stranger).

The Court finds that Plaintiffs' proposed method of service by publication meets that standard. Notice of this lawsuit—in the form of a quarter-page advertisement—will be published in Arabic once per week for four successive in both the print and online editions of *Ad-Dustour*, "one of the most widely circulated daily newspapers in Jordan with a circulation of 284,393." ECF No. 48 at 8. Because *Ad-Dustour* is partly state-owned, Plaintiffs make the fair assertion "it would be reasonable to assume that this newspaper would be available to the prison population where Defendant Abu Tayeh is incarcerated." *Id.* The Amended Complaint and Summons will also be published in both English and Arabic on the Global Legal Notices website, and Plaintiffs' published notice in *Ad-Dustour* would provide a link to the Global Legal Notices website that will remain active throughout the publication time period. *Id.* at 9. In this case, such service by publication comports both with existing case law and constitutional notions of due process. *See SEC v. Tome*, 833 F.2d 1086, 1093 (2d Cir. 1987) (granting leave to serve by publication in a newspaper in circulation where defendants resided in Europe, where the publication was "likely

to be read by international investors" like the defendants); *Smith v. Islamic Emirate of Afghanistan*, Case Nos. 01 Civ. 10132 & 01 Civ. 10144, 2001 WL 1658211, at *3 (S.D.N.Y. Dec. 26, 2001) (granting leave to serve by publication in several major Afghani newspapers and the Pakistani newspaper in which bin Laden published his Fatwahs).   Cases which have permitted service through Global Legal Notices website have done so only in conjunction with notice in a national newspaper of general circulation, as Plaintiffs propose here.   *See Langford v. Juárez Cartel*, No. 1:20-CV-132, 2020 WL 12969220, at *2 (D.N.D. Oct. 28, 2020) (approving the use of Global Legal Notices in conjunction with notice in a national newspaper of general circulation in Mexico to serve a member of a cartel who posed danger to traditional process servers); *Miller v. Juárez Cartel*, No. 20-cv-132, 2020 WL 12969219, at *2 (D.N.D. Sept. 19, 2020) (same).   Ultimately, Plaintiffs have established that they have tried to serve Defendant Abu Tayeh through traditional methods without success and that he is is effectively missing.   *Mullane* teaches that in those circumstances employment of a "probably futile means of notification . . . creates no constitutional bar."   339 U.S. at 317.

Service by publication will also not cause offense to foreign law.   Jordan is neither a party to the Hague Service Convention nor to any other applicable international agreement recognized in Rule 4(f).   ECF No. 41 at 4; *see also United States ex rel. Barko v. Halliburton Co.*, 952 F. Supp. 2d 108, 117 (D.D.C. 2013) ("Jordan is not a signatory of the Hague Service Convention, an international agreement that governs service of process over foreign citizens." (footnote omitted)); *Status Table*, Hague Conf. on Private Int'l L., https://www.hcch.net/en/instruments/conventions/sttus-tble,?cid=17 [https://perma.cc/228A-AFRP] (listing signatories to the Hague Service Convention, which do not include the country of Jordan).   In their initial motion seeking service by publication, Plaintiffs relied on the testimony of an experienced international process server

that "newspapers in Jordan will not publish legal notices which originate in the United States."
ECF No. 41-1, ¶ 15.  Despite this statement, Plaintiffs have now obtained preliminary approval to
publish the proposed notice in *Ad-Dustour,* suggesting that process server's view to the contrary
were incorrect.  In any event, regardless of whether service by publication is proper in Jordan,
service must only "*minimize* offense to foreign law," not avoid it completely.  *U.S. ex rel. Barko*,
952 F. Supp. 2d at 117 (holding that, while service by email is improper under Jordanian law, the
court ordering service was not located in Jordan and without an international agreement to the
contrary, the court may authorize a plaintiff to serve a defendant by necessary means).

Finally, the Court also finds the content of the proposed notice satisfactory.  The court in
*Langford* permitted notice by publication where the notice itself was clear, concise, and written in
the defendant's language, where it was published in a wide circulation newspaper that also
maintained an online presence, and where it contained means for the reader to access the full
pleadings.  2020 WL 12969220, at *2.  Here, the notice is clear and concise, and will be written in
Abu Tayeh's native language, Arabic.  *See* ECF No. 48-1 at 4, 6.  It will be published in a national
newspaper with wide circulation that also maintains an online edition, and within the notice there
will be a link that directs the reader to Global Legal Notices website where the full pleadings will
be published in both English and Arabic.  *Id.* at 4.  Therefore, the Court finds that the contents of
the notice are "reasonably calculated to apprise the defendant of the existence of [the] action."
*Langford*, 2020 WL 12969220, at *2.

The Court therefore concludes that the service by publication proposed by Plaintiffs is
reasonably likely to apprise Defendant Abu Tayeh of the action and comports with constitutional
notions of due process.  Accordingly, Plaintiffs' motion will be granted.

## IV.    CONCLUSION

For the reasons stated above, it is hereby **ORDERED** that Plaintiffs' renewed motion for leave to serve Defendant Abu Tayeh by publishing a notice in *Ad-Dustour* and on Global Legal Notices, ECF No. 48, is **GRANTED**.

**SO ORDERED.**


Date:  June 14, 2024

_____
G. Michael Harvey
United States Magistrate Judge